**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Vivek Chopra and Mukesh Aghi, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-10262 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Anil Manibhai Naik, individually, a/k/a A.M Naik, | ) | |
| and Larsen & Toubro Infotech, a Corporation, | ) | |
| d/b/a/ L&T Infotech | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Vivek Chopra ("Chopra") and Mukesh Aghi ("Aghi") brought suit against Anil Manibhai Naik ("Naik") and Larsen & Toubro Infotech ("L&T") asserting two counts of defamation per se and two counts of false light. Defendants move to dismiss based on lack of personal jurisdiction and for failure to state a claim. Defendants also move to strike portions of Plaintiffs' affidavits filed in support of their opposition to the motion to dismiss ("motion to strike"). For the following reasons, Defendants' motion to strike [32] is granted in part and denied in part and their motion to dismiss [16] is granted.

**Background**

Chopra lives in Illinois, Aghi in New Jersey, and Naik in India. L&T is an Indian corporation that provides global information technology services and solutions with an office in Cook County. Plaintiffs previously served as high ranking officers at L&T. In 2012, they were Co-Chief Executives and Executive Directors on the L&T board of directors. In 2014, they initiated requests to separate from L&T. In December 2014, Chopra terminated his employment with L&T, and in February 2015, Aghi did the same.

Naik held a press conference on July 4, 2016, a week before L&T's initial public offering. During the press conference, Shivani Shinde Nadhe, a reporter with the Business Standard, asked Naik about L&T's level of executive turnover. In response, Naik made the following comments: "[Chopra] could not cope with the changing times . . . [I]t is really a young people's world now . . . [He] crossed 55 and could not cope up with the changing world," (Dkt. 17-4 at 22:10-16), and "[Aghi] is a very good public . . . relationship man, but cannot close the deal . . . [b]ecause that need detail penetration." (Id. at 22:20-23).[1] Plaintiffs claim that Defendants were aware of the falsity of these statements because they were familiar with Plaintiffs' work histories and reasons for departing.

Subsequently, on July 5, 2016, the Economic Times, an Indian newspaper, published an article titled "[]Naik denies interference led to L&T executives' exits," which "quoted" Naik's statements about Plaintiffs. The article and quotes were purportedly republished through various other media outlets on the Internet. Plaintiffs claim that articles that included the defamatory statements appeared on their LinkedIn profiles and that these articles were accessible by their respective networks. Plaintiffs also claim that their families, friends, and colleagues, both residing in and out of Cook County, Illinois, read the articles. As a result, Plaintiffs allege that they were humiliated, embarrassed, emotionally distressed, and that they suffered reputational harm.

**Legal Standard**

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a prima facie case that jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a defendant submits affidavits or other evidence in opposition to personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence" in support of jurisdiction.

---

[1] In their complaint, Plaintiffs use the quotes from the Economic Times article described below. The quotes in the Economic Times article, however, are not direct quotes and do not match the language as reflected in the certified transcript of the press conference. Rather than quote the Economic Times article, this Court quotes the relevant portions of the certified transcript.

*Id.* at 783. "[A]ny facts in the defendant's affidavits that remain unrefuted by the plaintiff" are accepted as true, *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009), and any conflict in the supporting materials submitted by the parties is resolved in the plaintiff's favor. *Purdue Research*, 338 F.3d at 783.

## Discussion

*a. Motion to strike*

Chopra and Aghi each filed an affidavit in support of their opposition to Defendants' motion to dismiss. (Dkts. 27-4, 27-5). Defendants argue that portions of the affidavits should be stricken because they are not based on personal knowledge and because they contain inadmissible evidence in the form of conclusions and opinions.

Courts have the discretion to strike portions of affidavits if they are not based on personal knowledge. *United States v. Kmart Corp.*, No. 12-CV-881-NJR-PMF, 2014 WL 11696711, at *1 (S.D. Ill. Sept. 26, 2014); *Perez v. Panther City Hauling, Inc.*, No. 13-cv-0337, 2014 WL 2882919, at *4 (S.D. Ill. June 25, 2014). Personal knowledge includes inferences and opinions that are grounded in observation or other first-hand personal experience. *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (citations omitted). The inferences and opinions do not include "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience," *Id.*, or speculation as to an employer's state of mind. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014). An affiant's position in a company may be sufficient foundation for her testimony. *See, e.g, China Indus. (USA), Inc. v. New Holland Tire, Inc.,* No. 05 C 6734, 2006 WL 2290975, at *2 (N.D. Ill. Aug. 7, 2006) (Holderman, C.J.); *KnowledgeAZ, Inc. v. Jim Walter Res., Inc.*, 452 F. Supp. 2d 882, 888 (S.D. Ind. 2006); *Kmart*, 2014 WL 11696711 at *1. This Court addresses Defendants' objections below.

Defendants object to paragraph 4 of Chopra's affidavit, (Dkt. 27-4 ¶ 4), in which Chopra testifies that he resided in Illinois between 2012 and 2014, that he worked at L&T's Schaumburg, Illinois office, that he served Defendants' Illinois and Midwest clients, and that, "[a]t all pertinent times, Defendants have known these facts." They argue that Chopra has no personal knowledge of what Defendants know or knew. This statement is a reasonable inference based on Chopra's position as an executive and his relationship with Naik. (Id. at ¶ 2).

Defendants object to Chopra's statement that Defendants have known that Chopra resided in Illinois and has pursued his professional career there since leaving L&T. (Id. at ¶ 5). They object based on Chopra's lack of personal knowledge. Chopra submitted an additional affidavit in support of his original affidavit, (Dkt. 36-1), indicating that Defendants corresponded with him in Illinois, post-termination. (Id. at ¶¶ 5-6). It is reasonable to infer that L&T, as a corporate entity, "knew these facts." Chopra, however, provides no basis for supporting his contention that Naik knew these facts as well. Accordingly, the contested statement is stricken to the extent that it applies to Naik.

Defendants move to strike Chopra and Aghi's statements that, since their departures, L&T has maintained a significant roster of clients in Illinois and the Midwest. (Dkts. 27-4 ¶ 6, 27-5 ¶ 6). Plaintiffs argue that L&T's business is not the type to involve significant changes in clients from month to month. They also point out that Citibank was L&T's largest customer in 2015 through April 2016, and Citibank has significant Illinois and Midwest operations. These statements are stricken because Plaintiffs have not established a basis for personal knowledge of what L&T has done since they departed.

Defendants ask this Court to strike Chopra and Aghi's description of the press conference as a "road show" to convince the public, including buyers in North America and Illinois, to purchase L&T stock. (Dkts. 27-4 ¶ 7, 27-5 ¶ 7). Defendants also object to Plaintiffs' testimony that the goal

of the press conference was to reach a large audience of potential purchasers of stock, "including those in Illinois." It is reasonable to infer that the goal of the press conference was to reach a large audience of potential purchasers, as evidenced by the press conference transcript. (Dkt. 17-4). It is pure conjecture, however, that the goal was to specifically reach purchasers in Illinois. Accordingly, this testimony is stricken to the extent that it relates to the state of Illinois. This Court also notes that describing the press conference as a "road show" may be inappropriate testimony.

Defendants argue that Chopra and Aghi's testimony that they reasonably expect that Illinois residents purchased L&T shares as a result of the press conference, (Dkts. 27-4 ¶ 8, 27-5 ¶ 8), calls for speculation and conjecture. This Court agrees. Accordingly, these paragraphs are stricken.

Defendants ask this court to strike Plaintiffs' testimony that the press published Naik's statements throughout the world, including in North America and Cook County, Illinois, "as Defendants well know." (Dkts. 27-4 ¶ 13, 27-5 ¶ 12). Plaintiffs do not provide a basis for their positions that 1) the press published the statements throughout the world, 2) that publication specifically occurred "through a myriad of North American Internet media and business outlets," and 3) that Defendants knew of such distribution. Accordingly, paragraph 13 of Chopra's affidavit and paragraph 12 of Aghi's are stricken.

Defendants object to Chopra and Aghi's testimony that the Economic Times has a North American presence and that the Economic Times article was republished through myriad Internet businesses and media outlets, including in Illinois and on LinkedIn. (Dkts. 27-4 ¶ 14, 27-5 ¶ 13). Plaintiffs do not provide this Court with any articles published specifically in Illinois, they do not provide a basis for understanding *why* the article was featured on Chopra's LinkedIn page, and they do not claim that Defendants had access to Chopra's LinkedIn page. Accordingly, this testimony is stricken.

*b. Motion to dismiss – personal jurisdiction*

In this diversity case, the question of personal jurisdiction is resolved in accordance with federal due process jurisprudence because the reach of the Illinois long-arm statute, 735 ILCS 5/2-209, is coextensive with what the Fourteenth Amendment permits. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). For a court to exercise jurisdiction over a defendant consistent with due process, the defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 913 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). For there to be minimum contacts, a defendant must have "purposefully availed himself of the forum state, such that he should reasonably anticipate being haled into court there." *Id.* at 913 (internal quotations marks omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). A defendant – not the plaintiff or third parties – must create the contact with the forum state, and the contacts must be with the forum state itself, not just with individuals who reside there. *Id.* (citing *Walden v. Fiore*, - U.S. -, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014)). In tort cases, it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts" with the forum. *Walden* 134 S. Ct. at 1123. Ultimately, the question this Court must ask is "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.; *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). The Seventh Circuit has also cautioned against exercising jurisdiction over defendants whose actions merely cause "incidental and constitutionally irrelevant effects" on a plaintiff. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n. 1 (7th Cir. 2010).

There are two types of personal jurisdiction – general and specific. Plaintiffs only argue that specific jurisdiction exists. For a court to exercise specific jurisdiction over Defendants, this suit

must have resulted from injuries that arose out of or relate to Defendants' contacts with the state of Illinois. *Philos Techs.*, 802 F.3d at 913 (citing *Burger King*, 471 U.S. at 472-73)).

Plaintiffs contend that they have established a prima facie case that personal jurisdiction exists in Illinois. They contend that Naik intentionally directed defamatory statements against Chopra whom Defendants knew was an Illinois resident pursuing his profession there,[2] that Bloomberg and CNBC, which Plaintiffs describe as significant media outlets in North America and Illinois, attended the press conference that was meant "to convince prospective purchasers, including those in Illinois, to buy stock,"[3] and that L&T has a significant presence in North America. They argue that, together, all of this demonstrates that Naik's conduct was purposefully directed toward Illinois. Plaintiffs rely on *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), and *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1031 (N.D. Ill. 2013) (Kendall, J.), for support. This Court agrees with Defendants that, while they inform this Court's personal jurisdiction analysis, these cases are inapplicable.

In *Tamburo*, the Seventh Circuit determined that for a court to assert personal jurisdiction over an out of state defendant in an action involving defamatory statements a plaintiff would need to show that there was: 1) intentional conduct; 2) expressly aimed at the forum state; 3) with the defendant's knowledge the effects would be felt by the plaintiff in the forum state. 601 F.3d 693 at 703 (7th Cir. 2010) (discussing *Calder*, 465 U.S. at 790). There, the court held that the assertion of personal jurisdiction in Illinois was appropriate because the defendants published defamatory material on their websites or in blast emails about the plaintiff who operated his business in Illinois. *Id.* at 704. Readers were encouraged to boycott plaintiff's products or to contact and harass plaintiff

---

[2] The support for this proposition, (Dkt. 27-4 ¶ 5), is limited to L&T's knowledge.
[3] The support for this proposition, (Dkts. 27-4 ¶ 7, 27-5 ¶ 7), is limited to the goal of having the general public purchase L&T stock.

at his Illinois address. *Id.* at 706. Defendants did not deny that they were aware that plaintiff lived in Illinois in their supporting affidavits. *Id.* Accordingly, the court found that the defendants purposefully directed their conduct at Illinois.

In *Calder*, the Supreme Court found that California had personal jurisdiction over a reporter and editor who published a libelous article about a California citizen for the National Enquirer. 465 U.S. at 791. The Supreme Court held that the defendants' actions were expressly aimed at California – the Enquirer had a weekly California circulation of roughly 600,000, the defendants relied on "California sources" for the article, and the "brunt" of the injury was suffered by the plaintiff there. *Id.* at 785, 788-89. The *Calder* court found that "California [wa]s the focal point both of the story and of the harm suffered." *Id.* at 789.

Finally, in *Intercon*, the court found that personal jurisdiction was appropriate where defendants posted a defamatory letter and report about an Illinois resident on their website. 969 F. Supp. 2d at 1032. The defendants also sent these items to "selected news media." *Id.*

Here, it is undisputed that Naik made the statements in India and that they were later published electronically by third parties. Naik did not choose which parties published the statements or where the statements were to be published. (Dkt. 17-2 ¶¶ 6, 7). Naik and L&T also did not publish the statements themselves. (Id. at ¶ 9). Further, the transcript of the press conference shows that Plaintiffs were not the focal points of the press conference, that they were never mentioned by name, and that no one at the press conference discussed Illinois. In this case, the express goal was to inform the public about L&T, not to comment on Chopra, Aghi, or Illinois.

Rather than dismiss this case, Plaintiffs ask that this Court permit jurisdictional discovery on Defendants' solicitation of Illinois IPO purchasers and defaming and injuring a known Illinois resident and professional, and the relative fairness, burden, and convenience of litigating in Illinois versus India, rather than dismissing the case. Defendants argue that additional discovery would be

futile, therefore Plaintiffs' request should be denied. "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *see also Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (collecting cases). This Court finds that the requests for discovery on IPO solicitations in Illinois would not provide insight into Defendants' purportedly tortious conduct, and that any additional discovery on Defendants' conduct would not aid this Court's decision. Accordingly, Plaintiffs' request for jurisdictional discovery is denied.

This Court finds that Plaintiffs have failed to satisfy their burden in making a prima facie showing that Defendants are subject to this Court's personal jurisdiction. Plaintiffs' argument that Illinois was the target of Naik's statements rests on the ideas that the press conference was made before a large audience and because Bloomberg and CNBC were present. Plaintiffs have not established that the Bloomberg and CNBC representatives have a direct connection to Illinois, nor can they establish that Naik was aware of such connections, if they existed. Naik, in his declaration, makes it clear that he was under the impression that only Indian media would be present. Plaintiffs also make it clear that the press conference was for "the public;" general publication, rather than targeted publication, to an audience that may include members of the forum state is insufficient to establish minimum contacts. *Advanced Tactical Ordnance Sys.*, 751 F.3d at 802-03. Plaintiffs have failed to show that Defendants targeted Illinois beyond a general worldwide audience.

Plaintiffs may have felt the effects of Naik's statements in Illinois, but there is nothing else, apart from Chopra's injury, connecting Naik's actions to this forum. This Court finds that Plaintiffs have failed to establish that Defendants' conduct was expressly aimed at Illinois. Accordingly, this Court dismisses Plaintiffs claims for lack of personal jurisdiction.

**Conclusion**

For the foregoing reasons, Defendants' motion to strike [32] is granted in part and denied in part and their motion to dismiss [16] is granted. Plaintiffs may not reassert their claims in this Court because it would be inappropriate for this Court to assert personal jurisdiction over Defendants. Plaintiffs, however, may refile these claims in an appropriate venue, if such a venue exists. Civil case terminated.

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED: September 30, 2017